Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Suzanne B. Conlon | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 693 | **DATE** | 10/1/2001 |
| **CASE TITLE** | TYRONE JUSTIN GREER vs. BANK ONE, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Bank One's motion for summary judgment [29-1] is granted. Greer's motion for summary judgment [30-1] is moot. ENTER MEMORANDUM OPINION AND ORDER.

*Suzanne B. Conlon*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | OCT 0 5 2001 date docketed | |
| | Notified counsel by telephone. | | | | |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | FILED FOR DOCKETING 01 OCT -4 PM 4:57 | 10/2/2001 date mailed notice | |
| SB | courtroom deputy's initials | | | CB | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | | |
|---|---|---|
| TYRONE JUSTIN GREER | ) | |
| | ) | |
| Plaintiff, | ) | No. 01 C 693 |
| | ) | |
| v. | ) | Suzanne B. Conlon, Judge |
| | ) | |
| BANK ONE, et al. | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Tyrone Justin Greer, *pro se*, sues Bank One, formerly known as the First National Bank of Chicago and First Chicago ("FNBC") for race discrimination under Section 805 of the Fair Housing Act, 42 U.S.C. § 3605. Greer and Bank One move for summary judgment. Bank One's motion for summary judgment is addressed first.

## BACKGROUND

### I. Greer's Rule 56.1 Responses

Although *pro se* plaintiffs are entitled to more lenient standards in some circumstances, the standards do not diminish when it comes to complying with procedural rules. *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). Greer's Rule 56.1 responses to Bank One's statement of material facts include a vast number of denials without citation to any affidavits or documents. All relevant facts denied without supporting documentation must be accepted as true. *Schulz v. Serfilco, Ltd.*, 965 F.2d 516, 518-19 (7th Cir. 1992); Local Rule 56.1, 56.2. Accordingly, the following paragraphs are treated as admissions: ¶¶ 9-14, 16, 19, 22, 27-30, 36, 39, 42, 44, 58, 65, and 73. In addition, Greer's

denials often cite to documentation that do not support the conclusion asserted. On that basis, the following paragraphs are treated as admissions: ¶¶ 8, 20, 21, 37, 38, 40, 43, 45, 47, 50, 52-54, 57, 59-64, 66-69, and 74. Finally, the following paragraphs are deemed admissions because the supporting documentation (Pl. Ex. 2-4) is unauthenticated: ¶¶ 17 and 34. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (evidence submitted at summary judgment must be admissible at trial under Federal Rules of Evidence).

**II.     The Facts**

All facts are undisputed unless otherwise noted. Greer is an African-American male residing in Chicago, Illinois. Bank One is a national banking association with its principal place of business in Chicago. In August 1994, Greer met with Turner James at a FNBC branch and submitted a loan application for a home mortgage loan. Greer sought to purchase a residence at 7200 South Euclid Avenue in Chicago. Greer informed James he wanted the maximum loan possible. Accordingly, James entered $99,900 on the loan application.

Valarie Pearson, a loan processor, received Greer's application. In reviewing the application, Pearson learned Greer wanted the loan to build a two-flat residential building. However, Pearson's unit considered applications for purchases of existing homes only. After conferring with Dennis J. Godfrey, her supervisor, Godfrey instructed Pearson to transfer Greer's application to the Neighborhood Lending Division ("NLD"). NLD was the only FNBC lending unit authorized to consider applications for funding construction of residential housing in the low to moderate income areas of Chicago. Through correspondence in December 1994 and January 1995, Pearson informed Greer his loan application was transferred to NLD.

In January 1995, David Warner, a loan officer, received Greer's loan application. On

2

February 16, 1995, Warner met with Greer and obtained preliminary financial information. Warner discussed NLD's program and procedures, and handed Greer a NLD application package. Greer returned the new loan application to NLD on February 22, 1995. Although Greer had failed to enter a loan amount on the application, Warner accepted the application for processing. Relying on Greer's prior loan application, Warner instructed his assistant to use $99,900.00 as the requested loan amount. Warner sent Greer a Federal Truth in Lending form and a Good Faith Estimate of Settlement Charges form on February 24, 1995. Warner's cover letter expressly stated he would inform Greer of Bank One's decision on the loan. Greer returned those forms on March 1, 1995.

Meanwhile, Warner instructed his assistant to complete a "single-family application checklist," which outlined information a new applicant was required to submit. NLD's procedures provided the loan could not be completed until the applicant submitted all information on the checklist. On March 21, 1995, Warner performed a preliminary underwriting review to calculate Greer's qualified loan. Under NLD standards, Warner determined Greer was qualified for $72,375.00. At that time, Warner was uncertain whether to include Greer's projected rental income from the second unit of the building. Warner decided to leave the projected income out.

Warner informed Greer of the loan amount by letter, and asked him to submit 29 additional items on the checklist. Warner included "a 10-day letter," which advised Greer his response was needed in 10 days to continue processing the loan. In response, Greer sent Warner several items on the checklist. Warner learned he could include 75% of Greer's anticipated rental income in calculating the loan amount. After recalculation, Greer qualified for a loan of $84,466.40. Warner telephoned Greer, informed him of the revised loan amount, and scheduled a meeting on April 3, 1995. Greer failed to keep the appointment. On April 5, 1999, Warner received a letter from Greer

3

stating he wanted to end the review of his application. Greer stated: "I no longer feel comfortable with the processing of my application for a new construction loan." Pl. 56.1 Resp. at ¶ 72; Def. 56.1 Facts, Ex. 25. Based on that correspondence, Warner considered the application withdrawn. At that time, Greer had not submitted all requested information on NLD's checklist.

## DISCUSSION

### I. Standard of Review

Summary judgment is proper when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *King v. National Human Res. Comm.*, 218 F.3d 719, 723 (7th Cir. 2000). Once a moving party has met its burden, the non-movant must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *Bay v. Cassens Transp., Co.*, 212 F.3d 969, 972 (7th Cir. 2000). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000).

### II. Disparate Treatment under 42 U.S.C. § 3605

Greer asserts Bank One engaged in race discrimination in the loan application process. Specifically, Greer contends Bank One sent his loan application to NLD instead of the construction department to facilitate the denial of his loan. Greer alleges Bank One failed to provide professional service in a manner similar to other non-African-American applicants. In addition, Greer claims

4

Bank One lowered his application amount from $99,900 to $72,375 because of his race. Finally, Greer asserts the "10-day letter" was sent to him because he was African-American, and similarly qualified white applicants did not receive these letters.

To establish a *prima facie* case of disparate treatment in a loan application under § 3605, Greer must prove (1) he is a member of a protected class; (2) he applied for and was qualified for the loan; (3) the loan was rejected despite his qualifications; and (4) Bank One continued to approve loans for applicants with similar qualifications. *Latimore v. Citibank, F.S.B.*, 979 F. Supp. 662, 665 (N.D. Ill. 1997). Greer must show "race was a motivating consideration in [Bank One's] decision not to make the loan." *Id.* at 664 (quoting *Thomas v. First Fed. Sav. Bank*, 653 F. Supp. 1330, 1338-39 (N.D. Ind. 1987)); *Kaplan v. 422 Wellington Coop. Bldg. Corp.*, 567 F. Supp. 53, 57 (N.D. Ill. 1983).

It is undisputed Greer, an African-American, is a member of a protected class. Bank One claims Greer cannot satisfy the remaining three elements of a disparate treatment claim. Bank One argues Greer is unable to demonstrate he qualified for the loan because Greer voluntarily terminated the loan application process before completion. Def. 56.1 Facts at ¶ 73; Ex. 25. Bank One's argument is in error. If Bank One's approval of the loan is necessary for Greer to qualify under the second element, then no plaintiff would be able to demonstrate disparate treatment. The heart of a disparate treatment claim involves a lender's rejection of a loan. Indeed, the third element of a disparate treatment claim requires Greer to demonstrate Bank One rejected his application. Thus, Bank One's interpretation of the second element renders a disparate treatment claim meaningless.

In fact, it is undisputed Warner determined Greer qualified initially for a $72,375 loan, and then a $84,466.40 loan. Def. 56.1 Facts at ¶ 53, 68. That evidence is sufficient for Greer to raise a

5

genuine issue on the second element. In addition, Greer alleges disparate treatment because he was denied the $99,900 loan. To the extent Greer contends he qualified for that loan, Greer raises a genuine dispute of fact. Bank One completed the Federal Truth in Lending form and entered, under "Amount Financed," the loan amount of $97,115.00. Def. 56.1 Facts, Ex. 12. Presumably, the difference between $99,115 and $99,900 is Bank One's loan fees. *Id.* A reasonable jury could conclude Greer qualified for the $99,900 loan.

Nevertheless, Greer cannot demonstrate Bank One rejected his loan or refused to conduct business with him. In a letter dated April 1, 1995, Greer stated he no longer felt comfortable with the loan process. Def. 56.1 Facts at ¶ 72, Ex. 25. Greer concluded he wanted to end "all processing of [his application]." *Id.* He asked for a refund of the $200 loan application fee. There is no evidence that Bank One rejected Greer's loan. Instead, the undisputed evidence demonstrates Greer voluntarily withdrew his application.

Bank One asserts Greer cannot show it approved loans for non-African-American applicants with similar qualifications. In response, Greer claims numerous letters from Warner demonstrate he treated non-African-American applicants more favorably. Greer claims white applicants: (1) received hand delivered letters; (2) did not receive 10-day letters; and (3) were sent more cooperative letters. *See* Pl. 56.1 Resp., Ex. 9W1-9B55. Greer's arguments are without merit. There is no evidence Warner approved loans for any of these applicants. Nor is there evidence demonstrating these applicants' race. Greer's naked assertions of the applicants' race in his summary judgment response brief do not suffice. In addition, a review of Warner's letters show they are devoid of any material difference in the treatment of white or black applicants. Warner's form letters contain a request for information within 10 days. *Id.* Those letters include a detailed checklist of missing

6

items in an applicant's file. Warner invites all applicants for a phone conference or a meeting if they have questions. Finally, Greer's own letter was sent by overnight mail, and at least one African-American applicant letter was hand-delivered. *See* Pl. 56.1 Resp., Ex. 9B46. Viewing the evidence in the light most favorable to Greer, the checklist letters fail to raise a genuine issue that similar white applicants were treated more favorably.

With respect to Greer's remaining allegations, Greer conceded at his deposition he does not have evidence that similar non-African-American applicants had their construction loan applications sent to other departments. Def. 56.1 Facts at ¶ 76; Ex A at 58. In addition, Greer admits he is unaware of any incident where Bank One provided more courteous service to non-African-American customers. *Id.* at Ex. at 70. Furthermore, Greer cannot show Bank One used different procedures to calculate his loan than for white applicants. *See Latimore*, 979 F. Supp. at 666 (no *prima facie* case when plaintiff failed to show different procedures were used on non-minority applicants). Indeed, it is undisputed Warner followed standard NLD practices in calculating the loan amount. Warner even included Greer's projected rental income as requested. Def. 56.1 Facts at ¶ 68.

Finally, Greer fails to advance evidence that race was a motivating factor in Bank One's transactions with Greer. Greer offers Warner's letters to other applicants as evidence of race discrimination. As noted above, those letters are immaterial. "[T]he prima facie case must allow a factfinder to infer that the defendants acted because of racial considerations." *Latimore*, 979 F. Supp. at 667. No reasonable inference of discrimination can be drawn from Warner's letters. Without more, Greer's claim cannot survive summary judgment. Fed. R. Civ. P. 56(e); *Silk*, 194 F.3d at 798.

## **CONCLUSION**

Bank One's motion for summary judgment is granted. Greer's motion for summary judgment is moot.

October 1, 2001

ENTER:

*Suzanne B. Conlon*
Suzanne B. Conlon
United States District Judge